UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOLLY MANOJ CAPLASH,

                    Plaintiff,

          v.

JEH JOHNSON, Secretary, Department of
Homeland Security, LEON RODRIGUEZ,
Director, U.S. Citizenship & Immigration
Service, MARK HAZUDA, Director, USCIS
Nebraska Service Center, LORETTA LYNCH,
Attorney General of the United States,

                    Defendants.

**DECISION AND ORDER**

6:15-CV-06771 EAW

## **INTRODUCTION**

Over ten years ago, Plaintiff Jolly Manoj Caplash ("Plaintiff") filed a Form I-130 family-based immigration petition on behalf of his brother with the United States Citizenship and Immigration Service ("USCIS"). Plaintiff later relocated and did not update his address with USCIS. As a result, he did not receive USCIS's request for evidence and notice of the denial of the petition until nearly three years after-the-fact. He filed two motions to reopen his petition, both of which were denied as untimely.

Plaintiff brings this suit pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551-559, 701-706, against the Secretary of the Department of Homeland Security, the Director of USCIS, the Director of the USCIS Nebraska Service Center, and the Attorney General of the United States (collectively, "Defendants") and asks this Court to set aside Defendants' denial and subsequent refusals to reopen

- 1 -

Plaintiff's Form I-130 petition. Plaintiff contends that USCIS sent notices to an address that it knew was defunct, and thus he never had an opportunity to provide the additional information requested by USCIS. Defendants contend that Plaintiff failed to notify USCIS about his updated address, and thus they were under no obligation to take further steps to provide Plaintiff with reasonable notice before denying the Form I-130 petition.

Because Plaintiff was deprived of due process by Defendants' decision to deny his Form I-130 petition, the Court grants Plaintiff's motion for summary judgment in part (Dkt. 18) and remands the case to USCIS with directions that Plaintiff's priority date be restored, Plaintiff be provided with a reasonable opportunity to provide the additional evidence requested by USCIS, and USCIS re-adjudicate Plaintiff's Form I-130 petition in accordance with this Decision and Order.

## FACTUAL BACKGROUND

The following facts are undisputed and drawn from the parties' Rule 56 Statements of Fact unless otherwise noted.

Plaintiff, born Manoj Kaplash, changed his name to Jolly Manoj Caplash upon his naturalization as a United States citizen on February 20, 2003. (Dkt. 18-2 ¶ 1; Dkt. 21-2 at 1). On or about March 10, 2004, while residing in Gaithersburg, Maryland, Plaintiff filed a Form I-130 family-based immigration petition with USCIS on behalf of his brother, Rupinder Kaplash.[1] (Dkt. 18-2 ¶ 2; Dkt. 21-2 at 1). At the time, Plaintiff was

---

[1] This petition, if successful, would be a step toward ultimately allowing his brother to receive a visa to reside permanently in the United States. According to Defendants, Mr. Kaplash has been residing in the United States since 2008 as a beneficiary of an H1-B visa for specialized workers. (Dkt. 27 at 1-2).

not represented by counsel. (Dkt. 18-2 ¶ 3; Dkt. 21-2 at 1). On March 20, 2004, the USCIS Vermont Service Center confirmed receipt of the petition, as indicated by a Form I-797 receipt notice sent to Plaintiff's home in Maryland. (Dkt. 18-2 ¶ 4; Dkt. 21-2 at 1).

Plaintiff and Defendants dispute whether the Form I-797 informed Plaintiff of the need to update USCIS regarding changes in his address. (Dkt. 18-2 ¶ 5; Dkt. 21-2 at 1-2). The form stated: "The above application or petition has been received. It normally takes 150 to 999 days from the date of this receipt for us to process this type of case. Please notify us immediately if any of the above information is incorrect." (Administrative Transcript (hereinafter "Tr.") 10, 181).

Plaintiff relocated to Rochester, New York in July 2005, where he accepted a position as an oral and maxillofacial surgeon. (Dkt. 18-2 ¶ 6; Dkt. 21-2 at 2). He changed his address with the United States Postal Service (the "USPS"), believing that this action would sufficiently notify the federal government, including USCIS, of his new address. (Dkt. 18-2 ¶ 7; Dkt. 21-2 at 2). When Plaintiff filed the Form I-130 petition in 2004, he knew that there was a substantial waiting period for family-based, fourth-preference immigrant visas and that it would probably take many years, even a decade, before such a visa would become available for his brother. (Dkt. 18-2 ¶ 8; Dkt. 21-2 at 2). Thus, he was not surprised when he did not receive communication from USCIS regarding the petition. (Dkt. 18-2 ¶ 8; Dkt. 21-2 at 2). Plaintiff filed federal tax returns each year, listing his current mailing address, and his oral surgery practice website listed his name, telephone number, office address, fax number, and email address. (Dkt. 18-2 ¶¶ 9-10; Dkt. 21-2 at 2).

- 3 -

In March 2013, Plaintiff hired an immigration attorney to follow up with USCIS about the status of his Form I-130 petition filed on behalf of his brother. (Dkt. 18-2 ¶ 11; Dkt. 21-2 at 2). As of April 2, 2013, USCIS's case status website indicated that Plaintiff's case was still under "Initial Review" and that USCIS had not made a decision. (Dkt. 18-2 ¶ 12; Dkt. 21-2 at 2). The site also stated: "On September 3, 2010, the post office returned the notice we last sent you on this case. . . . This may have serious effects on processing this case," and included a phone number to call to update the address on file and have the notice resent. (Tr. 186).[2]

Plaintiff, through his attorney, submitted a Form G-639 Freedom of Information Act ("FOIA") request on May 14, 2013, to learn more about the status of the case, requesting copies of materials relating to his 2004 Form I-130 petition. (Dkt. 18-2 ¶ 14; Dkt. 21-2 at 2). On May 28, 2013, the USCIS National Records Center denied the FOIA request pursuant to 5 U.S.C. § 552(b)(6) by letter, stating that Plaintiff's request constituted an unwarranted invasion of his brother's personal privacy. (Dkt. 18-2 ¶ 15; Dkt. 21-2 at 2). On June 10, 2013, Plaintiff renewed his FOIA request by letter, stating that he was requesting copies only of records relating to the petition that he had filed himself and was not seeking to invade his brother's personal privacy. (Dkt. 18-2 ¶ 16;

---

[2]     Plaintiff's statement of material facts indicates that, as of April 2, 2013, USCIS's website stated that the post office had returned the notice last sent to Plaintiff, citing to Tr. 186. (Dkt. 18-2 ¶¶ 12-13). At oral argument, Plaintiff's counsel represented that the date April 2, 2013, was the date of the screen shot comprising Tr. 186. (Dkt. 28 at 34). It should be noted that the date does not appear on that page in the administrative transcript, but, because Defendants did not object to the representation of that date in their statement of material facts (Dkt. 22-1), the Court will treat the fact as stipulated. It is not known when that statement about the returned mail from September 2010, was first posted to the website.

Dkt. 21-2 at 2).  On June 19, 2013, the USCIS National Records Center denied Plaintiff's second FOIA request under 5 U.S.C. § 552(b)(6), stating that the FOIA request constituted an unwarranted invasion of Plaintiff's brother's privacy.  (Dkt. 18-2 ¶ 17; Dkt. 21-2 at 2).

After several unsuccessful attempts, Plaintiff's attorney was able to speak with a USCIS officer on July 16, 2013, regarding the I-130 petition and to update the address on file and resolve any other issues.  (Dkt. 18-2 ¶ 18; Dkt. 21-2 at 2).  Following this call, an email notice from USCIS on July 19, 2013, provided Plaintiff with his first notice that USCIS had denied his Form I-130 petition nearly three years earlier, on August 20, 2010.  (Dkt. 18-2 ¶ 18; Dkt. 21-2 at 2).

On August 7, 2013, Plaintiff filed a third FOIA request, including notarized letters from his brother and himself, authorizing the release of the case file.  (Dkt. 18-2 ¶ 19; Dkt. 21-2 at 2).  On August 9, 2013, already aware that USCIS had denied his petition but prior to receipt of the case file, Plaintiff filed a motion to reopen and reconsider the denial of his I-130 petition.  (Dkt. 18-2 ¶ 20; Dkt. 21-2 at 2; Tr. 176).  In the motion, Plaintiff explained that he had not received any notices or correspondences in the case and, when he first learned through the USCIS website that a notice had been returned as undeliverable, he immediately took action to determine the nature of the returned notice and status of the case. (Dkt. 18-2 ¶ 20; Dkt. 21-2 at 2).

On August 15, 2013, the USCIS National Records Center denied Plaintiff's third FOIA request by letter for lack of verification of identity in the form of a letter stating the full name, current address, and date and place of birth of the record's subject.  (Dkt. 18-2

¶ 21; Dkt. 21-2 at 2).  On September 16, 2013, Plaintiff filed a fourth FOIA request with notarized statements and verifications of identity for himself and his brother.  (Dkt. 18-2 ¶ 22; Dkt. 21-2 at 2).  Finally, by letter dated November 29, 2013, the USCIS National Records Center granted Plaintiff's fourth FOIA request—over six months after Plaintiff first attempted to obtain information from USCIS—and produced an 18-page record, which stated that the record consisted of the best reproducible copies of all records responsive to Plaintiff's request, released in full.  (Dkt. 18-2 ¶ 23; Dkt. 21-2 at 2).

The FOIA case file included a July 17, 2009 notice from USCIS of the transfer of Plaintiff's case to the Nebraska Service Center; the notice had been mailed to Plaintiff's previous address in Maryland and returned to USCIS as undeliverable.  (Dkt. 18-2 ¶ 24; Dkt. 21-2 at 2).  The returned mail stated in handwriting, "Moved out at least 10 months ago (if he/she ever lived here)."  (Dkt. 18-2 ¶ 24; Dkt. 21-2 at 2).  The case file also included a June 24, 2010 Request for Evidence ("RFE") letter, which had also been mailed to Plaintiff's Maryland address and returned with a handwritten note stating, "moved years ago."  (Dkt. 18-2 ¶ 25; Dkt. 21-2 at 2).  This RFE letter in the case file indicated that the "documentation submitted is not sufficient to warrant favorable consideration of the petition" and instructed the reader to "see Attachment for Details," though the letter in the case file contained no such attachment.[3]  (Dkt. 18-2 ¶ 26; Dkt. 21-

---

[3]     Plaintiff notes that the certified administrative record filed for the purposes of this litigation includes what "could have been the intended attachment to the June 24, 2010 RFE letter."  (Dkt. 18-2 ¶ 32).  Defendants object to this characterization, noting that Plaintiff has not challenged the authenticity of the administrative record and that the response to Plaintiff's FOIA request inadvertently omitted a page.  (Dkt. 22-2 at 2).  This omitted page requested either the birth certificates of both Plaintiff and his brother or

2 at 2). The FOIA case file also included a letter from August 20, 2010—issued two months after the RFE letter—denying the I-130 petition for failure to respond to the RFE, which was mailed to Plaintiff's Maryland address and returned with the handwritten note, "MOVED LONG AGO . . . AWAY." (Dkt. 18-2 ¶ 27; Dkt. 21-2 at 2).

Plaintiff made three attempts to update his pending motion to reopen and reconsider to include the case file materials received through the FOIA request, by letters dated December 20, 2013, December 23, 2013, and January 13, 2014. (Dkt. 18-2 ¶ 28; Dkt. 21-2 at 2). USCIS denied Plaintiff's motion to reopen and reconsider his I-130 petition by letter dated January 14, 2015, stating that the motion to reopen was untimely because it was not made within 30 days of the denial and because Plaintiff gave no excusable reason for the delay. (Dkt. 18-2 ¶ 29; Dkt. 21-2 at 2). Plaintiff filed a new motion to reopen on or about February 13, 2015, which included materials from the FOIA case file and noted that the RFE letter in the FOIA materials failed to specify any deficiency in the originally submitted evidence. (Dkt. 18-2 ¶ 30; Dkt. 21-2 at 2). USCIS denied this second motion on August 19, 2015, by letter. (Dkt. 18-2 ¶ 31; Dkt. 21-2 at 2).

The administrative record shows no attempt by USCIS to locate Plaintiff before denying his petition, though it does show that USCIS updated its case status website with

---

secondary evidence if no such certificates existed. (Tr. 210). Because Plaintiff has not objected to the authenticity of the administrative transcript, for example, in his briefing, *see e.g.*, *Silva-Calderon v. Ashcroft*, 371 F.3d 1135, 1136 n.1 (9th Cir. 2004), or by specific motion objecting to the administrative record, *see e.g.*, Motion (Objections) to Defendant's Proposed Joint Submission of Administrative Record, *Malenski v. Standard Ins. Co.*, No. CIV-11-408-SPS, 2012 WL 4485331 (E.D. Oka. Sept. 27, 2012), and because the issue is not dispositive to a resolution of the pending motion, the Court assumes that the attachment was, in fact, originally sent to Plaintiff's Maryland address on June 24, 2010.

information about the mail returned from Plaintiff's Maryland address by at least April 2, 2013. (Dkt. 18-2 ¶¶ 12, 33; Dkt. 21-2 at 2; Tr. 186). Ultimately, USCIS denied Plaintiff's I-130 petition based on his failure to respond to correspondence that USCIS knew he had never received. (Dkt. 18-2 ¶ 34; Dkt. 21-2 at 2).

## PROCEDURAL BACKGROUND

On December 29, 2015, Plaintiff commenced this proceeding. (Dkt. 1). The administrative record was filed on April 28, 2016 (Dkt. 14), and Plaintiff moved for summary judgment on June 9, 2016 (Dkt. 18). Defendants moved for summary judgment on July 7, 2016 (Dkt. 21), and Plaintiff and Defendants each responded on July 21, 2016, and July 28, 2016, respectively (Dkt. 22; Dkt. 23). Oral argument was held before the undersigned on October 28, 2016, and Plaintiff provided a supplemental submission on November 28, 2016 (Dkt. 26), with Defendants following suit on November 29, 2016 (Dkt. 27).

## DISCUSSION

I.    **MOTION FOR SUMMARY JUDGMENT**

A.    **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).   Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Here, both parties agree that there is no dispute as to the material facts and that summary judgment is appropriate—but they disagree as to the legal conclusions that this Court should reach based on those undisputed material facts.

### B.    Immigration and Nationality Act Statutory Background

The Immigration and Nationality Act (the "INA") specifies:

> (1) a worldwide limitation on the total number of family-sponsored immigrant visas issued each year, 8 U.S.C. § 1151(c); (2) preference categories for certain types of family members of citizens and [lawful permanent residents], *id.* § 1153(a); (3) numerical limitations on the number of family-sponsored immigrant visas in each family preference category, *id.;* and (4) a generally uniform limitation that natives of any single foreign state not constitute more than 7% of the visas granted to family-sponsored immigrants, *id.* § 1152(a)(2).

*Li v. Renaud*, 654 F.3d 376, 377 (2d Cir. 2011).  While the numerical limitations relating to the country or worldwide number of visas granted per year do not apply to children

under the age of 21,[4] spouses, or parents of United States citizens, *see* 8 U.S.C. §§ 1151(b)(2)(A)(i),[5] 1152(a)(2),[6] 1153(a),[7] they do apply to all other qualifying relatives. *See* 8 U.S.C. §§ 1151(a), 1151(c), 1152(a)(2), 1153(a). These other qualifying relatives are allocated into four preference groups: (1) unmarried sons and daughters of United States citizens; (2) spouses and unmarried sons and daughters of permanent resident aliens; (3) married sons and daughters of United States citizens; and (4) brothers and sisters of citizens. 8 U.S.C. § 1153(a)(1)-(4). These visas are subject to the worldwide limitations, per-country limitations, and to limitations on the total number of visas that will be issued in each preference category. *Id.*; 8 U.S.C. §§ 1151(a); 1152(a)(2).

A family sponsor who is either a United States citizen or a lawful permanent resident may file a petition under 8 U.S.C. § 1154(a)(1) on behalf of an alien relative, and USCIS will assess the petition to determine whether the alien on behalf of whom the petition is made is eligible for preference. *See* 8 U.S.C. § 1154(a)(1). If so, USCIS

---

[4]     8 U.S.C. § 1101(b) provides: "As used in subchapters I and II of this chapter – (1) the term "child" means an unmarried person under twenty-one years of age . . . ."

[5]     8 U.S.C. § 1151(b) provides: "Aliens described in this subsection, who are not subject the worldwide levels or numerical limitations of subsection (a) of this section are as follows: . . . (2)(A)(i) Immediate relatives." The term "immediate relatives" includes (minor) children, spouses, and parents of a United States Citizen. *Id.*

[6]     8 U.S.C. § 1152(a)(2) provides a per-country limitation of seven percent of the total of such visas made available under 8 U.S.C. § 1153(a). 8 U.S.C. § 1153(a) pertains to non-immediate family preference categories, not to the immediate family category. Thus, immediate family members are not subject to the per-country limitations.

[7]     8 U.S.C. § 1153(a) allocates non-immediate family members into four preference categories.

"shall . . . approve the petition."   8 U.S.C. § 1154(b).   This approval "does not automatically cause the agency to issue a visa or grant permanent lawful resident status to the beneficiary; instead, the beneficiary receives a place in line to wait for a visa."   *Li*, 654 F.3d at 378.   These visas are issued on a first-come-first-served basis within the preference groups based on the date that the petition was filed (the "priority date").   *Id.*   It is not uncommon for immigrants from countries where family-sponsored petitions far exceed the numerical limitations, to wait a decade or more to receive a visa after USCIS grants the petition.   *Id.*

If a petition is denied due to abandonment, such a denial may not be appealed, but the petitioner may file a motion to reopen under 8 C.F.R. § 103.5.   *See* 8 C.F.R. § 103.2(b)(15).   Such a denial does not preclude the petitioner from filing a new benefit request with a new fee, but the priority date of the abandoned benefit request may not be applied to the new application.   *See id.*   In other words, if a petition is deemed abandoned, the petitioner loses his place in line.

### C.   Administrative Procedure Act Statutory Background

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review," 5 U.S.C. § 704, and gives standing to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."   5 U.S.C. § 702.

> [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. . . .   The reviewing court

> shall . . . hold unlawful and set aside agency action, findings, and
> conclusions found to be—(A) arbitrary, capricious, an abuse of discretion,
> or otherwise not in accordance with law; [or] (B) contrary to constitutional
> right, power, privilege, or immunity. . . .

5 U.S.C. § 706(2)(A)-(B). "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. "In reviewing an agency's disposition of constitutional issues, a district court need not defer to the agency's decision; in fact, it must engage in a *de novo* review." *Sanders v. Szubin*, 828 F. Supp. 2d 542, 548 (E.D.N.Y. 2011) (citing *Cablevision Sys. Corp. v. Fed. Commc'ns Comm'n*, 570 F.3d 83, 91 (2d Cir. 2009)). However, when reviewing an action under the arbitrary and capricious standard of § 706(2)(A), "the review is deferential and, although a reviewing court 'must hold unlawful and set aside any agency action found to be arbitrary [and] capricious, . . .' the scope of this review is 'narrow,' . . . and courts should not substitute their judgment for that of the agency under review." *Id.* (quoting *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007)) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### D.    USCIS Violated Plaintiff's Constitutional Right to Due Process[8]

#### 1.    Plaintiff's Form I-130 Petition is Entitled to Due Process Protection

The Due Process Clause of the Fifth Amendment provides: "No person shall be

. . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend.

V.  "[P]roperty interests protected by procedural due process extend well beyond actual

ownership of real estate, chattels, or money"; however:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72, 577 (1972).   Property

interests are created not by the Constitution, but by "existing rules or understandings that

stem from an independent source such as state law—rules or understandings that secure

certain benefits and that support claims of entitlement to those benefits." *Id.* at 577.   The

Supreme Court has recognized that "a benefit is not a protected entitlement if government

officials may grant or deny it in their discretion."   *Town of Castle Rock, Colo. v.

Gonzales*, 545 U.S. 748, 756 (2005) (citing *Kentucky Dep't of Corr. v. Thompson*, 490

U.S. 454, 462-63 (1989)).

---

[8]    The Court acknowledges the doctrine of constitutional avoidance and the "general principle that dispositive issues of statutory and local law are to be treated before reaching constitutional issues." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 160 n.2 (1979).   But, because Plaintiff's and Defendants' main arguments are in regard to constitutional due process, and because the Court does not credit Plaintiff's arguments as to the arbitrary and capricious standard, the Court must address the "constitutional question before it sooner or later, [and] chooses to do so sooner for organizational and conceptual purposes." *Ass'n of Proprietary Colleges v. Duncan*, 107 F. Supp. 3d 332, 345 n.56 (S.D.N.Y. 2015).

The Second Circuit has held in the land-use benefit context that an entitlement to a benefit exists where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted," *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985), due to the "degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case." *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989). Thus, even if the probability of an authority acting favorably in a specific case is objectively high, "the opportunity of the local agency to deny [the benefit] suffices to defeat the existence of a federally protected property interest," *id.*, and the "'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.* The Second Circuit has since "consistently reaffirmed that [the] inquiry 'focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision.'" *Clubside, Inc. v. Valentin*, 468 F.3d 144, 153 (2d Cir. 2006) (emphasis in original) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995)). Discretion turns on whether the authority "is required to [grant the benefit] upon ascertainment that certain objectively ascertainable criteria have been met." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

This analysis has been applied in contexts outside of real property in determining whether a property interest derives from certain laws. *See, e.g., Elliot v. City of N.Y.*, No. 06-CV-296 (KMK), 2008 WL 4178187, at *6-7 (S.D.N.Y. Sept. 8, 2008) (applying the

above analysis to a substantive due process claim where the defendant implemented a reservoir and dam policy allegedly in violation of an existing regulation). In fact, the Ninth Circuit has considered and implemented this analysis specifically in the context presented by this case: Form I-130 petitions.[9] In *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013), the court held that the grant of an I-130 petition for immediate relative status is a "protected interest [] entitled to the protections of due process." *Id.* at 1156. The court reasoned that the language of the relevant statute led to the conclusion that the "decision of whether to approve an I-130 visa petition is a nondiscretionary one because 'determinations that "require application of law to factual determinations" are nondiscretionary.'" *Id.* at 1155 (citations omitted). The statute analyzed in that case is the one at issue here as well: INA § 204, codified at 8 U.S.C. § 1154(b). As the Ninth Circuit explained:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the [Secretary of Homeland Security][10] *shall*, if he determines that the facts stated in the petition are true and that the alien [o]n behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, *approve the petition* and forward one copy thereof to the Department of State. The

---

[9]   Like the Second Circuit, the Ninth Circuit has similarly held that a "reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citation omitted).

[10]   The original language of the statute grants this authority to the Attorney General, but with the creation of the Department of Homeland Security ("DHS"), the responsibility is now that of the Secretary of DHS. *See* 6 U.S.C. § 202(4) (granting authority to the DHS Secretary).

> Secretary of State shall then authorize the consular officer concerned to
> grant the preference status.

*Id.* (emphasis added).

In other words, as held by the Ninth Circuit, the language in the statute does not leave room for discretion. The Secretary of DHS must approve the petition if: (1) the facts in the petition are true; and (2) the alien on behalf of whom the petition is made is an immediate relative or a relative in one of the four preference categories. The Ninth Circuit explained that, while there are eligibility requirements, "[v]irtually no government benefit is available to individuals without a requirement that certain conditions are met," thus warning against confusing eligibility requirements with discretion. *Id.*

The *Ching* decision relies on Supreme Court precedent, and Ninth Circuit precedent that closely tracks Second Circuit precedent. Thus, although there does not appear to be any case law in the Second Circuit directly addressing this issue,[11] based on *Ching* and the analogous case law in this Circuit cited above, this Court holds that a constitutionally protected property interest attaches to 8 U.S.C. § 1154(b), and, by extension, to the adjudication of Plaintiff's Form I-130 petition. Defendants, in fact, concede in their reply that Plaintiff "does likely have a protected interest in the mere adjudication of his Form I-130." (Dkt. 23 at 2 n.1).

---

[11]   Two cases in the Second Circuit cite to *Ching*: *Parella v. Johnson*, No. 1:15-cv-0863 (LEK/DJS), 2016 WL 3566861 (N.D.N.Y. June 27, 2016), and *Simko v. Bd. of Immigration Appeals*, 156 F. Supp. 3d 300 (D. Conn. 2015); however, neither case is on point for this discussion.

Because a property interest attaches to the adjudication of Plaintiff's Form I-130, the Court need not reach whether Plaintiff has a family-based liberty interest in the Form I-130 petition, in order to conclude that procedural due process protections apply.

## 2.   Defendants did not Afford Plaintiff Reasonable Notice

The Supreme Court has stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While the efforts employed to give notice need not be "heroic," *Dusenbery v. United States*, 534 U.S. 161, 170 (2002), "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. "The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice." *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988). "The Supreme Court has repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee." *Id.* at 651 (citing *Mullane*, 339 U.S. at 319). This case presents the question of whether such notice by mail was sufficient when Defendants were specifically aware that Plaintiff would not receive the notice based on prior failed attempts to contact Plaintiff at the same mailing address.

The Supreme Court addressed a similar question in *Jones v. Flowers*, 547 U.S. 220 (2006), when it decided whether the State of Arkansas afforded constitutionally

sufficient notice to a taxpayer of the tax foreclosure on his home where notices of tax deficiency and forfeiture of the property were mailed to the taxpayer through certified mail, but returned as "unclaimed." *Id.* at 223-24. The Court noted that in previous cases in which notice was found sufficient, the government, in attempting to provide the notice, had "heard nothing back indicating that anything had gone awry." *Id.* at 226; *see e.g.*, *United States v. Jackson*, No. 12 CR 10 DAB, 2012 WL 6641528, at *5 (S.D.N.Y. Dec. 17, 2012) (holding that, where the "[g]overnment had no reason to suspect that the notification had not been delivered to Defendant" and "the notice was addressed to the correct apartment number," "notice was reasonable and reasonably calculated to inform Defendant of his deportation hearing"). By contrast, the Court in *Jones* addressed "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed," 547 U.S. at 227, and found that "a person who actually desired to inform a real property owner of an impending tax sale of a house he owns" would not take no action upon the return of a certified letter as unclaimed. *Id.* at 229. Under the circumstances, "the State [could] not simply ignore that information," *id.* at 237, and was required to "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it [was] practicable to do so." *Id.* at 240. The Court did not define what constitutes "additional reasonable steps," but rather found that such steps under the specific facts before it could include notice by regular mail, posting a notice on the front door, or addressing the notice to the "occupant." *Id.* Additionally, despite an explicit statutory obligation requiring the plaintiff to keep his address updated, the Court found that the plaintiff had not

"forfeit[ed] his right to constitutionally sufficient notice" through his noncompliance. *Id.* at 232 (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.")).

    *Jones* has been applied in a variety of circumstances outside of the property forfeiture context. *See Echavarria v. Pitts*, 641 F.3d 92, 95 n.2 (5th Cir. 2011) (collecting cases).[12] Thus, this Court concludes that it is appropriate to apply the *Jones* analysis to the facts here.[13] As a result, Defendants were required to pursue additional reasonable

---

[12]    The Fifth Circuit enumerated the following cases that have followed *Jones v. Flowers*, 547 U.S. 220 (2006) in additional contexts:

> *Rendon v. Holder,* 400 Fed. Appx. 218, 219 (9th Cir. 2010) (unpublished) (finding that the INS took "additional reasonable steps" to notify alien of the denial of his application for legalization); *Peralta–Cabrera v. Gonzales,* 501 F.3d 837, 845 (7th Cir. 2007) (noting in denial of alien's motion to reopen deportation proceedings that "it is the government's responsibility to ensure that notice by mail is successfully delivered"); *Crum v. Vincent,* 493 F.3d 988, 992–93 (8th Cir. 2007) (finding that *Jones* did not apply when defendant admitted to receiving notice of the revocation of his medical license); . . . *Yi Tu v. Nat'l Transp. Safety Bd.,* 470 F.3d 941, 945–46 (9th Cir. 2006) (finding that notice was insufficient when government had knowledge that notice of suspension pilot license would not reach petitioner) . . . .

*Echavarria*, 641 F.3d at 95 n.2.

[13]    Defendants make the argument that USCIS could not have deprived Plaintiff of constitutionally adequate notice because Plaintiff (rather than Defendants) is the one who initiated the proceeding through his I-130 petition, and therefore he was necessarily *already* apprised of the pendency of the action, *i.e.*, the adjudication of his application—receipt of which was confirmed via the I-797 notice of receipt. (*See* Dkt. 21-1 at 14-15; Dkt. 23 at 2). The Court has found nothing to support the proposition that Defendants did not owe Plaintiff constitutionally sufficient notice because Plaintiff initiated the proceeding and was aware of its pendency, as Defendants argue. Here, Plaintiff was

steps to notify Plaintiff of the RFE before terminating his pending petition because they were specifically aware that Plaintiff would not receive the notice to supply the additional requested evidence or the denial of his petition such that he could move to reopen his case in a timely manner.

Defendants argue that the line "[p]lease notify us immediately if any of the above information is incorrect" in the I-797 notice of receipt categorically required Plaintiff to keep his address with USCIS updated, obviating its need to take any additional steps to locate Plaintiff since Plaintiff failed to fulfill his obligation.  (Dkt. 21-1 at 14-16).  However, it is ambiguous at best whether this language meant simply to correct any then-incorrect information or created an obligation to update the information if it became incorrect in the future.[14]

Even assuming *arguendo* that the line in question was a directive to Plaintiff to keep his address updated with USCIS, Defendants would not be automatically relieved of their due process obligations to Plaintiff under *Jones*.  *See Jones*, 547 U.S. at 231-32

---

entitled to due process protections in connection with the adjudication of his Form I-130 petition.  Defendants were not entitled to circumvent those due process requirements because Plaintiff initiated the process.  Under Defendants' logic, there could never be a claim for lack of due process when the complaining party initiated the claim in which he held a property interest.  Constitutional rights are not circumscribed in this way.

[14]    Plaintiff points to the fact that a later version of the Form I-797 receipt notice from December 2013 for the filing of an I-129 petition specifically informs the recipient of the need to update the recipient's address—"If your address changes—If your mailing changes while your case is pending, call 800-375-5283 or use the 'Online Change . . . of Address' function on our website.  Otherwise, you might not receive notice of our action on this case"—*in addition to* the ambiguous language that is contested in this case. Plaintiff argues that this addition of specific language supports the notion that USCIS knew that the contested language did not adequately inform a recipient—namely, Plaintiff—of the need to update his address.  (Dkt. 22-2 at 2-3; Dkt. 22 at 13-14).

(holding that the plaintiff's failure to comply with his statutory obligation to update his address did not relieve the government of its constitutional obligation to provide adequate notice).

The remaining questions then, are whether Defendants took additional steps and, if so, were they reasonably calculated to apprise Plaintiff of the action being taken and afford him an opportunity to present his objections.

Here, Defendants posted a notice to the USCIS website stating, "On September 3, 2010, the post office returned the notice we last sent you on this case. . . . This may have serious effects on processing this case," in addition to posting a phone number to call to update the address. (Tr. 186). While this could arguably be considered an "additional step," it was not reasonably calculated to apprise Plaintiff of the pendency of the action. Defendants sent to Plaintiff first, a July 17, 2009 notice of the transfer of his case to the Nebraska Service Center; second, a June 24, 2010 RFE; and third, an August 20, 2010 denial of his petition. (Dkt. 18-2 ¶¶ 24-27; Dkt. 21-2 at 2). The notice on the website that the mail was returned on September 3, 2010 was necessarily posted *after* USCIS had denied Plaintiff's petition on August 20, 2010. Even had Plaintiff seen the notice on the website promptly, he had already been deprived of any opportunity to present objections or, in this case, respond to the theretofore unknown RFE and possibly prevent the denial of his petition for abandonment. Defendants' *ex post facto* online action could not reasonably be construed as apprising Plaintiff of the action being taken against him and affording him an opportunity to present his objections.

Even if the notice of returned mail had been posted on the USCIS website before the petition was denied, "notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable."[15]  *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972); *see also Jones*, 547 U.S. at 237-39 (finding a notice of tax sale insufficient where certified letters were returned unclaimed and publication in a local newspaper was the only method of attempted notice employed); *Mennonite Bd.*, 462 U.S. at 798 ("Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. . . . [U]nless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.").  As explained below, Plaintiff was likely reasonably identifiable in this case.

While the Court does not rule on what additional steps categorically would or would not have fulfilled this obligation, an inquiry to the USPS, as suggested by Plaintiff, under 39 C.F.R. § 265.6(d)(5)(i)[16] may have been a good place to start.  Under that regulation, the USPS may disclose names and addresses of customers to a federal agency "upon prior written certification that the information is required for the performance of its duties."  *Id.*  Defendants cite this regulation in a conclusory manner, as though it obviously cuts against their having to contact the USPS (Dkt. 21-1 at 16); however, the

---

[15]     Though not notice by publication in the traditional sense, the information on the website was published in a publically-accessible forum.

[16]     As of December 27, 2016, 39 C.F.R. § 265.6(d)(5)(i) is no longer in effect; however, it was in effect from September 1, 2005 through December 26, 2016 and, thus, was relevant during the period at issue in this case.

information here could easily be considered necessary for the performance of USCIS's

duty to uphold due process. Defendants further argue that the USPS most likely would

not have had any record of Plaintiff's new address in any case because it only retains

change-of-address records for up to eighteen months. (Dkt. 21-1 at 17-18). But, as the

*Ching* court stated:

> "'[a] first principle of Anglo–American jurisprudence, . . . basic to the
> conception of due process in the procedural sense' is 'that the ends do not
> justify the means.'" *Pillsbury Co. v. F.T.C.*, 354 F.2d 952, 964 (5th Cir.
> 1966) (quoting Douglas, *We The Judges*, 354 (Doubleday 1956)). It is
> process that the procedural due process right protects, not the outcome.

725 F.3d at 1156. Thus, Defendants might have fulfilled their due process obligation had

they contacted the USPS regardless of whether the USPS maintained Plaintiff's current

address, because interagency outreach is neither an impracticable nor unreasonable

option in attempting to locate one owed notice. *See e.g.*, *Dickerson v. United States*, No.

12-mc-51642, 2013 WL 1898367, at *4 (E.D. Mich. May 7, 2013) (finding the

government had clearly met its burden under *Jones* where it published notice, "sent the

notice both by certified and regular mail, searched a law enforcement database, and made

inquiries to the Postal Service to discover [the plaintiff's] whereabouts"); *Bermudez v.

City of N.Y. Police Dep't*, No. 07 Civ. 9537(HB), 2008 WL 3397919, at *2-7 (S.D.N.Y.

Aug. 11, 2008) (determining that, even where the Drug Enforcement Agency attempted

to verify the plaintiff's address on two national databases, unsuccessfully sent notice to

the address found on the databases, and published notice in *The Wall Street Journal* for

three weeks, notice of a forfeiture was insufficient in circumstances where "a simple call

to the NYPD" could have revealed the plaintiff's address, "giving due regard to the

practicalities and particularities of the case"). In other words, due process did not require that USCIS successfully contact Plaintiff—only that it take reasonable steps to provide Plaintiff with notice.

Finally, Defendants argue that *Jones* stands for the proposition that "[e]ven when the government has initiated proceedings to seize a person's property, it is not required to search in a directory for the property owner's address in order to inform the person of the proceedings," (Dkt. 21-1 at 16-17), citing to the sentences: "Jones believes that the Commissioner should have searched for his new address in the Little Rock phonebook and other government records such as income tax rolls. We do not believe the government was required to go this far." *Jones*, 547 U.S. at 235-36. However, *Jones* is more nuanced than Defendants make it out to be. The Supreme Court reasoned that a returned piece of mail labeled "unclaimed" "did not necessarily mean that [the address] was an incorrect address; it merely informed the Commissioner that no one appeared to sign for the mail" and, given that the taxpayer was obligated to keep his address updated, an open-ended search was more burdensome than other additional steps that the Court enumerated as reasonable under the circumstances. *Id.* at 236.

Here, unlike in *Jones*, the returned mail contained clear indications that the address Defendants were using was actually incorrect. Each of the three attempts to mail information to Plaintiff at his Maryland address returned with, "Moved out at least 10 months ago (if he/she ever lived here)," "moved years ago," and "MOVED LONG AGO . . . AWAY," respectively. (Dkt. 18-2 ¶¶ 24-27; Dkt. 22-2 at 2). Additionally, as discussed above, it is ambiguous whether there was a requirement for Plaintiff to keep his

address updated with USCIS. For these reasons, the fact-specific finding that the

government was not required to search records and tax rolls in *Jones* cannot be said to

apply here. *Cf. Popa v. Holder*, 571 F.3d 890, 893, 896-97 (9th Cir. 2009) (finding that a

notice to appear, received by the plaintiff, combined with a hearing notice, not received

by the plaintiff because she had not subsequently updated her address, provided adequate

notice in a removal hearing context where the notice to appear informed the plaintiff both

that she "must notify [the Court] immediately . . . whenever [she] change[d] [her]

address" and, if she did "not otherwise provide an address at which [she] may be reached

during the proceedings, then the Government [would] not be required to provide [her]

with written notice of [her] hearing").

Because Defendants took no additional steps to provide Plaintiff with notice where

practicable options existed, Defendants violated Plaintiff's constitutional right to due

process under 5 U.S.C. § 706(2)(B).

### 3.    Arguments Raised During Oral Argument

At oral argument, Defendants set forth an additional argument that Plaintiff was

on notice of the need to keep his address updated with USCIS through the Code of

Federal Regulations.[17]   Defendants cited to 8 C.F.R. § 103.2(b)(13)(i) (Dkt. 28 at 21),

which reads:

> If the petitioner or applicant fails to respond to a request for evidence or to
> a notice of intent to deny by the required date, the benefit request may be
> summarily denied as abandoned, denied based on the record, or denied for
> both reasons. If other requested material necessary to the processing and

---

[17]    These arguments were also, in part, the subject of the post-hearing supplemental
briefing submitted to the Court. (Dkt. 26; Dkt. 27).

> approval of a case, such as photographs, are not submitted by the required
> date, the application may be summarily denied as abandoned.

*Id.* This regulation merely describes the circumstances under which USCIS may deny a

petition as abandoned—it says nothing about the method by which a request for evidence

or notice of intent to deny may be sent to Plaintiff, or Plaintiff's obligation to keep his

address with the agency updated.

Defendants also cited to 8 C.F.R. § 103.8 (Dkt. 28 at 20-21), which reads, in

pertinent part:

> This section states authorized means of service by the Service on parties
> and on attorneys and other interested persons of notices, decisions, and
> other papers (except warrants and subpoenas) in administrative proceedings
> before Service officers as provided in this chapter.
>
> (a)    Types of service—
>
> (1)    Routine service.
>
> (i)    Routine service consists of mailing the notice by ordinary mail
> addressed to the affected party and his or her attorney or representative of
> record at his or her last known address . . .

*Id.* This regulation apprises parties that notices will be sent to the party's last known

address.   However, the regulation does not go so far as to impose an affirmative

obligation on Plaintiff nor does it state that such service will be sufficient, *cf.* 8 U.S.C.

§ 1229(a)(1)(F)(ii), and cannot excuse USCIS from its obligation to provide due process.

In *Jones*, even though the plaintiff had an unambiguously affirmative legal obligation to

keep his address updated, in "fail[ing] to comply with [his] statutory obligation [to do so,

he did not] forfeit[] his right to constitutionally sufficient notice."  *Jones*, 547 U.S. at

231-32 (citing Ark. Code Ann. § 26-35-705 ("In the event that the mailing address or

electronic address information of the taxpayer changes, the taxpayer has an obligation to furnish the correct mailing address or electronic address information.")).  Here, Plaintiff's failure is far less egregious than that in *Jones* because Plaintiff was never given an affirmative mandate to update his address with USCIS.  Because the Supreme Court decided that, despite an affirmative statutory mandate, a plaintiff who failed to update his address could not be deprived of his right to constitutional notice, Plaintiff here cannot be deprived of constitutional notice on the basis of the above-quoted regulation.

### E.   Defendants' Actions were Not Arbitrary and Capricious

"'The scope of review under the "arbitrary and capricious" standard is narrow,' and courts should not substitute their judgment for that of the agency." *Karpova*, 497 at 267 (quoting *State Farm*, 463 U.S. at 43).

> [S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned.

*Id.* at 268 (citing *State Farm*, 463 U.S. at 43).  However, agency action is arbitrary and capricious and must be set aside when the agency:

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* (citing *State Farm*, 463 U.S. at 43).

### 1.    Denial of Plaintiff's Original I-130 Petition

USCIS denied Plaintiff's original petition under 8 C.F.R. § 103.2(b)(13)(i), a regulation entitled: "Failure to submit evidence or respond to a notice of intent to deny." (Tr. 207).   In relevant part, the regulation reads: "If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, denied based on the record, or denied for both reasons." 8 C.F.R. § 103.2(b)(13)(i).  The denial sent to Plaintiff read:

> The record shows that you were given 42 days in which to submit additional evidence in support of the application or petition.  A response was not received by the required date.  Therefore, in accordance with Title 8, Code of Federal Regulations, Part 103.2(b)(13), the application or petition is hereby denied due to abandonment.

(Tr. 207).

Plaintiff argues that this denial was arbitrary and capricious because USCIS's "explanation . . . runs counter to the evidence before the agency" as the agency knew that Plaintiff no longer lived at the address, never notified Plaintiff of an obligation to update his address, and never updated its website to reflect that Plaintiff's petition was no longer in "initial review." (Dkt. 18-1 at 18).   These arguments largely mirror Plaintiff's arguments on the constitutional issue addressed above.  However, in most cases, courts are not required to evaluate potential constitutional infirmities under arbitrary and capricious review because the "agency's organic statute does not command explicit constitutional balancing." *Communications Act—Scope of Arbitrary and Capricious Review*, 123 Harv. L. Rev. 352, 356, 359 (2009) (citing *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009)) ("[Justice Scalia] pointed out that the

Administrative Procedure Act . . . provides separately for constitutional review of agency actions, precluding considerations of such concerns within the scope of arbitrary and capricious review."). Thus, in most cases "[section] 706(2)(A) review would focus on infirmities in an agency's factual reasoning," not on constitutional infirmities. *Id.* at 360-61.

Here then, the Court must consider USCIS's factual reasoning apart from the constitutional issue discussed above. Given that no substantive facts are at issue in this case, the only "factual reasoning" the Court can consider is that employed by USCIS in determining that the petition was abandoned and, as explained above, this reasoning must be given considerable deference. USCIS reasoned that Plaintiff had exceeded the 42 days he had been given to respond to the RFE and terminated the petition as abandoned under the regulation accordingly. Leaving the constitutional notice issue aside, this action cannot be said to be arbitrary and capricious.

### 2.      Denial of Plaintiff's First Motion to Reopen and Reconsider

Plaintiff first filed a motion to reopen and reconsider with USCIS on August 9, 2013 (Dkt. 18-2 ¶ 20; Dkt. 21-2 at 2; Tr. 176). On January 14, 2015, USCIS denied the motion, (Dkt. 18-2 ¶ 29; Dkt. 21-2 at 2; Tr. 71-72), citing 8 C.F.R. §§ 103.5(a)(1)(i) and 103.5(a)(2). (Tr. 71-72). 8 C.F.R. § 103.5(a)(1)(i) states, in relevant part:

> Any motion to reconsider an action by the Service filed by an applicant or petitioner must be filed within 30 days of the decision that the motion seeks to reconsider. Any motion to reopen a proceeding before the Service filed by an applicant or petitioner, must be filed within 30 days of the decision that the motion seeks to reopen, except that failure to file before this period expires, may be excused in the discretion of the Service where it is

demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.

And 8 C.F.R. § 103.5(a)(2) states:

> Requirements for motion to reopen. A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence. A motion to reopen an application or petition denied due to abandonment must be filed with evidence that the decision was in error because:
>
> (i)     The requested evidence was not material to the issue of eligibility;
>
> (ii)    The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
>
> (iii)   The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Despite the discretion afforded USCIS in § 103.5(a)(1)(i), none of the non-discretionary requirements of § 103.5(a)(2) were present in this case—the notice went to the address on Plaintiff's petition and Plaintiff had not updated his address with USCIS in writing. Thus, again, leaving aside the constitutional notice issue, which would inform whether the delay was "beyond the control" of Plaintiff, USCIS's decision to deny the motion, based on purely the facts before it, was not arbitrary and capricious.

### 3.     Denial of Plaintiff's Second Motion to Reopen

Plaintiff filed a second motion to reopen shortly after the denial of his first motion on or about February 13, 2015.  (Dkt. 18-2 ¶ 30; Dkt. 21-2 at 2; Tr. 5-8).  This motion was denied on August 19, 2015.   (Dkt. 18-2 ¶ 31; Dkt. 21-2 at 2; Tr. 2-4).  Citing 8

C.F.R. § 103.5(a)(1)(i), USCIS denied the motion, erroneously treating the motion as one for reconsideration. (Tr. 1). As explained above, the regulations allow for a modicum of discretion relating to motions to reopen that is not indicated for motions for reconsideration; they also include an outlay of what is required for a successful motion to reopen, for example, new information as to an incorrect mailing address. *See* 8 C.F.R. § 103.5(a)(2). While USCIS's review under an incorrect standard here—that of reconsideration rather than reopening—may in fact have been arbitrary and capricious, courts must take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. Because 8 C.F.R. § 103.5(a)(2) again would not have covered the scenario in which Plaintiff found himself, as with his first motion to reopen, the error was harmless and this Court cannot find the agency action arbitrary and capricious.

## CONCLUSION

In light for the foregoing, Plaintiff's motion for summary judgment (Dkt. 18) is granted in part and Defendants' motion for summary judgment (Dkt. 21) is denied. USCIS's denial of Plaintiff's petition is set aside and the matter is remanded to USCIS with directions that Plaintiff's priority date be restored, Plaintiff be provided with a reasonable opportunity to provide the additional evidence requested by USCIS, and USCIS re-adjudicate Plaintiff's Form I-130 petition in accordance with this Decision and Order.[18]

---

[18]     The Court does not remand with instructions to grant the petition as there is an open question for the agency relating to Plaintiff's and his brother's birth certificates as requested in the RFE. (Tr. 210). *Cf. Simko v. Bd. of Immigration Appeals*, 156 F. Supp. 3d 300, 315 (D. Ct. 2015) ("remand[ing] the case to the agency with directions to grant

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 18, 2017
Rochester, New York

---

[the] plaintiff's I-130 Petition" because "there [were] no open questions for the agency to reconsider. . . ."). "[W]hen a court determines that an agency has acted contrary to law, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (citation omitted); *see also Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014) ("[W]hen an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings.").